J-S35020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| CECIL WAYNE HENSLEY | : | |
| | : | |
| Appellant | : | No. 298 MDA 2021 |

Appeal from the Judgment of Sentence Entered January 26, 2021,
in the Court of Common Pleas of York County,
Criminal Division at No(s):  CP-67-CR-0004103-2020.

BEFORE:   OLSON, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED MARCH 09, 2022**

Cecil Wayne Hensley appeals from the judgment of sentence imposed following his conviction for two counts of driving under the influence ("DUI"), one alcohol-related and one drug-related, arising from the same incident. Hensley challenges only the sufficiency of his drug-related conviction. Upon review, we reverse that conviction.

After a bench trial, the trial court found the following facts:

> On June 12, 2020, Trooper David Owens of the Pennsylvania State Police, (herein "PSP"), was driving north on Delta Road in York County, when he observed a car going south bound at a high rate of speed. [Hensley's] car "blew [Trooper Owens's] doors right off as [he] was traveling." [Hensley's] speed gained Trooper Owens's attention, who also noted [Hensley] was driving erratically.

---

[*] Retired Senior Judge assigned to the Superior Court.

Additionally, [Hensley's] center brake light was not operating. Trooper Owens initiated a traffic stop and approached the driver. Trooper Owens observed a strong odor of alcoholic beverage coming from the vehicle and [Hensley] exhibited glassy eyes and thick slurred speech. [Hensley] was asked if he had anything to drink. [Hensley] responded that he drank one tall Natty Ice beer. Trooper Owens asked if [Hensley] drank a twenty-four (24) ounce beer, and defendant responded yes.

Trooper Owens then administered Standard Field Sobriety [Tests] (herein "SFST"). The first SFST Trooper Owens demonstrated was the walk and turn test. [Hensley] performed poorly and showed signs of impairment on six (6) out of eight (8) clues on the walk and turn. Trooper Owens then had [Hensley] perform the one-legged stand. While performing this SFST, [Hensley] again performed poorly; [Hensley] raised his arms, put down his foot, and was swaying. [Hensley] stated to Trooper Owens that he had a small amount of marijuana in his front pocket. Trooper Owens pulled out an envelope that had a piece of paper in it which had residue of marijuana inside.[1]

In Trooper Owens's opinion, [Hensley] was too impaired to drive. [Hensley] then was placed into custody and taken to York County Central Booking. [Hensley] was read the DL26-B form in which Defendant refused chemical testing. The Motor Vehicle Recording (herein "MVR") was played for the court, which essentially confirmed Trooper [Owens's] testimony.

[Hensley] did indicate to Trooper Owens that his eardrums were blown out. [Hensley] testified that he incurred the injury five days prior to the date in question, when he hit his head when swimming. [Hensley] testified that his injuries were treated by a physician at Wellspan Outpatient Urgent Care. He further stated that the injury caused [Hensley's] balance to be off; [Hensley] described being dizzy, in extreme pain, and had loss of hearing. [Hensley] did not put forth any supporting evidence of an injury.

Trial Court Opinion, 4/23/21, at 2-5 (footnotes and citations omitted).

---

[1] Hensley later told Trooper Owens and testified at trial that it was a Four Loko alcoholic beverage. N.T., 12/8/20, at 22, 33.

In addition to the above facts, our own review of the record, including the portions of the MVR played at trial, reveals that Hensley took an alcohol breathalyzer test at the scene and was informed by Trooper Owens that the result exceeded the legal limit. N.T., 12/8/20, at 23 (indicating Hensley's BAC test result was a .104).

Originally, the Commonwealth only charged Hensley with Driving Under the Influence of **Alcohol** — General Impairment — First Offense. 75 Pa.C.S.A. § 3802(a)(1) (emphasis added), and a summary offense that is not at issue on appeal. On the day of the trial, however, after giving prior notice to Hensley, the Commonwealth requested to amend the information to add a charge of Driving Under the Influence of a Controlled Substance *(**Marijuana**)* — General Impairment — First Offense. 75 Pa.C.S.A. § 3802(d)(2) (emphasis added). N.T., 12/8/20, at 5-6. Hensley objected, but the trial court allowed the amendment. Significantly, the Commonwealth chose not to charge Hensley under Section 3802(d)(3) which prohibits driving under "the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive."

Following a non-jury trial, the court found Hensley guilty of all three charges and imposed sentence at the same proceeding. The trial court determined that the two DUI counts merged for sentencing purposes, and imposed sentence under Section 3804(c). That section applies to individuals who violate Section 3802(a)(1) ("DUI-alcohol") **and refused a breath or**

**blood test**, or who violate Section 3802(d) ("DUI-controlled substance"). The court imposed the minimum sentence under Section 3804(c): a period of incarceration of three days to six months, a mandatory fine of $1,000, costs of prosecution, and standard treatment requirements related to a DUI offense. The court denied Hensley's post-sentence motion, and this timely appeal followed. Both Hensley and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Hensley only challenges his DUI-controlled substance conviction. He raises a single issue:

> Whether the evidence was insufficient to sustain [Hensley's] Driving under the Influence of a Controlled Substance conviction where there was no evidence Hensley was specifically impaired by a controlled substance as required for his conviction?

Hensley's Brief at 4.[2]

Preliminarily, we disagree with the trial court's suggestion that this appeal is moot. The trial court observed that it independently convicted Hensley of DUI-alcohol, and because Hensley's two convictions merged, he would have received the same sentence even if the evidence was insufficient to support his DUI-controlled substance conviction. **See** Trial Court Opinion, 4/23/21, at 15. However, under the facts of this case, the minimum sentence

---

[2] In his Rule 1925(b) concise statement, Hensley also challenged the weight of the evidence supporting his DUI-controlled substance conviction. He abandoned that argument before this Court.

for these two convictions is slightly different. ***Compare*** 75 Pa.C.S.A. §

3804(a)(1)[3] with Section 3804(c)(1)[4].

Because the record reflects that Hensley submitted to breath testing,

the minimum sentence for his DUI-alcohol conviction would involve no

incarceration, but rather a mandatory minimum of six months of probation,

_____

[3] **(a) General impairment.--**Except as set forth in subsection (b) or (c), an individual who violates section 3802(a) (relating to driving under influence of alcohol or controlled substance) shall be sentenced as follows:

> (1)　For a first offense, to:
> (i) undergo a mandatory minimum term of six months' probation;
> (ii) pay a fine of $300;
> (iii) attend an alcohol highway safety school approved by the department; and
> (iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 (relating to drug and alcohol assessments) and 3815 (relating to mandatory sentencing).

75 Pa.C.S.A. § 3804(a).

[4] **(c) Incapacity; highest blood alcohol; controlled substances.--**An individual who violates section 3802(a)(1) and refused testing of breath under section 1547 (relating to chemical testing to determine amount of alcohol or controlled substance) or testing of blood pursuant to a valid search warrant or an individual who violates section 3802(c) or (d) shall be sentenced as follows:

> (1)　For a first offense, to:
> (i) undergo imprisonment of not less than 72 consecutive hours;
> (ii) pay a fine of not less than $1,000 nor more than $5,000;
> (iii) attend an alcohol highway safety school approved by the department; and
> (iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

75 Pa.C.S.A. § 3804(c).

and a lesser fine of $300. 75 Pa.C.S.A. § 3804(a)(1). By contrast, Hensley's

DUI-controlled substance conviction involved the higher minimum penalties

that the court imposed under Section 3804(c), including jail time and a $1,000

fine. Thus, if the evidence was insufficient to support the DUI-controlled

substance conviction, Hensley would be entitled to a lesser sentence on his

DUI-alcohol conviction. Thus, this issue is not moot, and we will address the

merits of Hensley's sufficiency claim.

Our standard of review for sufficiency claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Gause*, 164 A.3d 532, 540-41 (Pa. Super. 2017) (*en*

*banc*) (citation omitted). Moreover, although the fact finder may make

reasonable inferences from the testimony presented, the "inferences must

flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt." ***Commonwealth v. Scott***, 597 A.2d 1220, 1221 (Pa. Super. 1991). "The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review." ***Id.*** Finally, "[b]ecause evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013).

Hensley challenges his DUI-controlled substance conviction. The DUI statute prohibits a person from operating a vehicle when "[t]he individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(d)(2). Therefore, to convict a defendant under this section, the Commonwealth must establish three elements: 1) that the defendant drove; 2) while under the influence of a controlled substance; and 3) to a degree that impairs his defendant's ability to drive safely. ***Commonwealth v. Griffith***, 32 .3d 1231, 1239 (Pa. 2011).

Hensley does not dispute that he drove on the night of the incident. The crux of Hensley's argument challenges the Commonwealth's evidence regarding the remaining two elements. Although he admitted to consuming

"a little bit of weed" earlier in the evening, Hensley asserts that there was no evidence that he was high at the time he was pulled over, or that he was under the influence of marijuana to a degree that impaired his ability to drive. Hensley Reply Brief at 2. Hensley argues that the indications of marijuana impairment are fundamentally different from those stemming from alcohol intoxication, and that the Commonwealth did not show his impairment was due to marijuana. Hensley Brief at 14-17; Reply Brief at 3. He notes that "behavioral signs of impairment from alcohol include slurred speech, poor balance and the odor of alcohol. Conversely, the signs of impairment from marijuana include tremors, incomplete thoughts and the odor of marijuana." Hensley's Brief at 14 (citing Charles Scoot Courrege, *Drugged Driving: How the Legalization of Marijuana Has Impaired the Ability of the Louisiana DWI Law*, 44 S.U.L.Rev. 423, 438 (Spring, 2017)).

Hensley concedes that the Commonwealth's evidence supported a conviction for DUI-alcohol. Trooper Owens observed a strong smell of alcohol, Hensley had glassy eyes and slurred speech, and he did poorly on two balance field sobriety tests (the walk and turn test and the one-legged balance test). Hensley Brief at 14, 16. Additionally, Hensley admitted to drinking a large can of high-alcohol-content beer within a few hours of driving and his BAC exceeded the legal limit.

By contrast, he argues a lack of evidence to support the conviction for DUI-controlled substance. Trooper Owens never mentioned the smell of

marijuana, either burnt or unburnt, coming from the car or Hensley. *Id.* at 14. There was no evidence of tremors or incomplete thoughts. To the contrary, Hensley was responsive and cooperative during the traffic stop. *Id.* at 17. There was no admission of marijuana use close in time to driving, or evidence of the amount of marijuana consumed. The empty pouch with marijuana residue gave no indication of the time or amount of the drug Hensley consumed. As such, Hensley contends the Commonwealth did not prove his DUI-controlled substance charge beyond a reasonable doubt.

In response, the Commonwealth claims it has no burden to show how high Hensley was when he was pulled over. Commonwealth's Brief at 13. It relies on Hensley's admission that he smoked a little bit of weed that night and that an empty pouch of marijuana residue was found on Hensley. Also, Hensley was impaired that evening. And, he refused a chemical blood test.

To begin our analysis, we note that evidence of consumption of a drug, standing alone, is insufficient to prove impairment. *Commonwealth. v. Etchison*, 916 A.2d 1169, 1172 (Pa. Super. 2007) (reversing a DUI-controlled substance conviction when the only evidence of impairment was the presence of metabolites of cannabinoids in the defendant's blood and when an expert witness testified that the presence was not an indication of current impairment); *see also Gause* (reversing a DUI-controlled substance conviction because, *inter alia*, the Commonwealth presented no evidence that the defendant has recently ingested marijuana or that "an odor of marijuana

emanated from his person or from his vehicle at the time he was stopped"). Instead, impairment evidence should be drawn from the factual circumstances. *Commonwealth. v. DiPanfilo*, 993 A.2d 1262, 1267 n. 5 (Pa. Super. 2010) (describing a hypothetical scenario in which an officer pulls over a suspect for driving erratically and encounters a cloud of marijuana smoke and typical signs of heavy marijuana use).

Here, the trial court based its decision to convict Hensley of DUI-controlled substance on the following:

> [Hensley] repeated and voluntarily offered to Trooper Owens that [he] had marijuana in his pocket. While Trooper Owens did not recover any amount of marijuana on [Hensley] that the trooper deemed chargeable, [Hensley] did state "I smoked a little bit of weed" in response to whether [he] consumed any illegal drugs.
>
> [The trial court] observed a substantial portion of the MVR and considered Trooper Owens['s] testimony that [Hensley], by his own accord, told the trooper that [he] smoked marijuana prior to driving his vehicle. [Hensley] refused to have any chemical testing. [Hensley] also conflicted his statements when telling Trooper Owens what kind of alcohol [he] consumed that night. Based upon the evidence before the court, including the testimony and observations of [Hensley] and the MVR, there was sufficient evidence beyond a reasonable doubt that [Hensley] was impaired by drugs to the point he was incapable of safe driving.

Trial Court Opinion, 4/23/21, at 10-11. As explained below, none of this evidence, either alone or when considered together, supports Hensley's DUI-controlled substance conviction.

First, Hensley's admission of smoking marijuana is evidence that he consumed it at some point prior to operating the vehicle but does not suggest it caused his impairment. Section 3802(d)(2) only prohibits operating a vehicle while "under the influence of a drug . . . to a degree which impairs the individual's ability to safely drive." *See Commonwealth v. Williamson*, 962 A.2d 1200, 1201 (Pa. Super. 2008) ("the Commonwealth does not need to prove or show the *amount* of the controlled substance involved in the prosecution" for violating 75 Pa.C.S.A. § 3802(d)(2). Rather, the offense only requires proof that the defendant was under the influence to a degree that causes impairment") (emphasis original). The language of Section 3802(d)(2) therefore requires that the consumption of a controlled substance must be sufficient to cause impairment; conversely, some consumption of a controlled substance may not be sufficient to cause impairment.

Thus, Hensley's admission is not in itself probative evidence that he was impaired from marijuana. Although the trial found that Hensley admitted to smoking marijuana "prior to driving," the record is devoid of any evidence to establish that his consumption was recent enough to "form a clear connection between marijuana use and impairment." *Gause*, 164 A.3d at 537 (Pa. Super. 2017). It instead merely establishes the first element of the offense: that Hensley consumed a controlled substance.

In this regard, we disagree with the Commonwealth's assertion that it "has no such burden" to establish "how high [Hensley] was." Commonwealth's

Brief at 13. On the contrary, it is entirely the Commonwealth's burden to prove that Hensley was sufficiently "high" to "impair[] [his] ability to safely drive, operate or be in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(d)(2). *Gause*, *supra*.

The trial court also determined that Hensley was impaired due to drug consumption based on footage depicted in the Motor Vehicle Recording "MVR." Trial Court Opinion, 4/23/21, at 10-11. We have reviewed the portions of the MVR shown to the trial court and do not believe they depict any evidence of impairment by drugs distinguishable from impairment by alcohol. Thus, the MVR likewise is insufficient evidence to sustain Hensley's conviction for DUI-controlled substance.

Next, the trial court cites Hensley's refusal to undergo chemical testing after his arrest as evidence that he was guilty of DUI-controlled substance. Under 75 Pa.C.S.A. § 1547(e) of the Vehicle Code, such a refusal is admissible evidence in any summary or criminal proceeding involving violations of the DUI statute. This evidence may be used to show consciousness of guilt. *Commonwealth v. Bell*, 211 A.3d 761, 773 (Pa. 2019). No presumption arises from the evidence of refusal, but it may be considered along with other factors. 75 Pa. C.S.A. §1547(e).

Evidence of refusal alone is not sufficient evidence, because the Commonwealth must show more than consumption of a controlled substance; it must also demonstrate that the controlled substance caused the

- 12 -

impairment. ***Griffith***, ***supra***. Thus, even assuming that the results of a chemical test would have been positive for the presence of marijuana, here no other indicia showed that Hensley was impaired from marijuana to the degree that he could not safely operate his vehicle. Had there been no indication that Hensley was under the influence of alcohol above the legal limit, his refusal of chemical testing might be evidence of his guilt for DUI-controlled substance. Then, we would have unexplained signs of impairment along with a refusal to undergo chemical testing, from which we could infer that the cause of the impairment was the marijuana. However, those are not the facts in the case presently before us. Instead, the evidence strongly suggests alcohol impairment.

The trial court further found that Hensley's conflicting statements about the alcohol he consumed was sufficient to show impairment from marijuana. Shortly after Trooper Owens pulled Hensley over, he asked him if he had anything to drink that night, to which Hensley responded he drank a "Natty Ice." N.T., 12/8/20, at 16. Approximately nine minutes later, Trooper Owens asked Hensley again what he had consumed, and Hensley said he drank a Four Loko. ***Id.*** at 22. On cross-examination, however, Hensley reiterated that he had only consumed a Four Loko that night. ***Id.*** at 33. He was not asked about the discrepancy in his answers. Both beverages are high-alcohol-content beer; thus, the inconsistent testimony about the brand is immaterial.

Although the Commonwealth suggests that Hensley changed his story and fabricated his alcohol consumption to draw attention away from his marijuana use, Trooper Owens plainly detected an odor of alcohol, and not marijuana, coming from Hensley and his vehicle. N.T., 12/8/20, at 35. Moreover, these conflicting statements are also consistent with alcohol intoxication and are not indicative of recent marijuana use, sufficient to sustain Hensley's conviction for DUI-controlled substance.

Finally, the trial court's reliance upon Trooper Owens's observations following the traffic stop as supporting Hensley's DUI-controlled substance conviction is not supported by the record. In short, Trooper Owens's testimony was insufficient to connect Hensley's impairment with his admission of marijuana use. Trooper Owens testified that he smelled alcohol coming from Hensley's vehicle and Hensley himself, Hensley had "glassy eyes and thick slurred speech," and Hensley "showed signs of impairment on six out of eight clues" in the field sobriety test. N.T., 12/8/20, at 9-12. Trooper Owens's only mention of marijuana was to say that Hensley admitted to possessing it on his person and that he obtained a small bag from Hensley's pocket containing marijuana "flakes" and "residue" that "wasn't really anything." *Id.* at 13, 27.

At no point did Trooper Owens testify that Hensley showed signs of impairment due to marijuana, or that he detected the smell of marijuana coming from Hensley's vehicle or on his person. Although the trooper's

testimony, which the trial court credited, established that Hensley was impaired, it did not establish or even suggest that the impairment resulted from a controlled substance other than alcohol.[5] To be sure, the Officer did not arrest Hensley for DUI-controlled substance on the night of his arrest; he only charged him with DUI-alcohol and a summary traffic offense. Trooper Owens's testimony was not sufficient to sustain Hensley's conviction under Section 3802(d)(2).

In *Gause*, *supra*, a police officer pulled Gause over for a traffic violation. When she approached the vehicle, she smelled alcohol and Gause stated that he had consumed "one 12-ounce can of beer." *Gause*, 164 A.3d at 535. Gause then completed field sobriety tests "with varying levels of success." *Id.* On cross-examination, defense counsel elicited from the officer that she neither smelled nor saw marijuana. *Id.* Moreover, the officer testified that "[Gause's] speech was not slurred and that, outside of the field sobriety tests, [Gause's] balance and coordination were fine." *Id.*

The police officer in *Gause* went on to testify, however, that she gives the "Romberg Test" when "she suspects marijuana usage because she associates eyelid tremors, as in this case, with marijuana usage." *Id.* Although Gause "submitted himself to a drug recognition evaluation, he refused chemical testing." *Id.*

---

[5] As noted above, Hensley's breathalyzer result further supports this conclusion.

- 15 -

Based on this evidence, a jury convicted Gause of two DUI counts, DUI-alcohol and DUI-controlled substance. The trial court found the two counts merged for sentencing purposes, sentenced him to five years of intermediate punishment, and denied his post-sentence motion. Gause filed a timely appeal to this Court.

Among the issues raised by Gause, was whether the trial court erred in permitting the officer to render her opinion that body tremors and eyelid tremors were indicative of marijuana usage, as well as a claim that the evidence was insufficient to support his Section 3802(d)(2) conviction.[6]

In addressing the first issue, we found that the police officer's testimony was incompetent and that the trial court should have excluded it under Pennsylvania Rule of Evidence 701. *See Gause*, 164 A.3d at 537-540. As to the sufficiency challenge, the Court concluded:

> Without [the officer's] testimony, the evidence even when viewed in the light most favorable to the Commonwealth as verdict winner, did not support a conviction of DUI-controlled substance. In fact, there was a total lack of proof that Gause was under the influence of a drug to a degree that his ability to safely drive was impaired. Thus, the conviction under subsection 3802(d)(2) cannot stand.

*Gause*, 164 A.3d at 540.

---

[6] Gause also challenged the sufficiency of the evidence supporting his Section 3802(a)(1) conviction. We agreed and reversed his judgment of sentence for that conviction as well. *See Gause*, 164 A.3d at 540-42.

Here, as in **_Gause_**, there was a total lack of proof that Hensley's ability to drive safely was impaired by his marijuana use. The only evidence of record—Hensley's admission that he had smoked an unknown quantity of marijuana at an unknown time prior to driving—even when considered in a light most favorable to the Commonwealth as verdict-winner, did not support a conviction of DUI-controlled substance.[7]

In sum, while the evidence was sufficient to show Hensley's impairment on the night in question was caused by the consumption of alcohol, it was insufficient to show that the impairment was caused by marijuana use. As a result, we must reverse Hensley's DUI-controlled substance conviction under Section 3802(d)(2), vacate his judgment of sentence on that count, and remand for resentencing consistent with this memorandum.

Conviction reversed. Judgment of sentence vacated in part. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/09/2022

---

[7] We note that in situations where there is evidence of both alcohol and drug consumption, but inadequate evidence of which substance cause the defendant's impairment, the proper violation upon which to charge a DUI defendant would be Section 3802(d)(3).